# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

CHARLES KINZEL and
DEBRA KROENING on behalf of
Themselves and all others similarly
situated,

      Plaintiffs,

v.

BOYCE HYDRO POWER, LLC;
EDENVILLE HYDRO PROPERTY, LLC;
BOYCE MICHIGAN, LLC;
BOYCE HYDRO LLC;
SMALLWOOD HYDRO PROPERTY LLC;
SECORD HYDRO PROPERTY LLC;
WILLIAM D. BOYCE TRUST 2350 u/a/d
10/1908; WILLIAM D. BOYCE
TESTAMENTARY TRUST 3649 u/a/d 6/1929;
WILLIAM D. BOYCE TESTAMENTARY
TRUST 3650 u/a/d 6/1929; LEE W. MUELLER;
MICHAEL W. d'AVENAS; STEPHEN B.
HULTBERG; JPMORGAN CHASE & CO.,
jointly and severally,

      Defendants.

Case No.
Hon.

**CLASS-ACTION COMPLAINT
AND DEMAND FOR JURY
TRIAL**

HERTZ SCHRAM PC
Elizabeth C. Thomson (P53579)
Patricia A. Stamler (P35905)
Matthew J. Turchyn (P76482)
Attorneys for Plaintiffs
1760 S. Telegraph Rd., Ste. 300
Bloomfield Hills, MI 48302-0183
(248) 335-5000
lthomson@hertzschram.com
pstamler@hertzschram.com
mturchyn@hertzschram.com

## CLASS-ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, Charles Kinzel ("Mr. Kinzel") and Debra Kroening ("Kroening") (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, state the following for his Class-Action Complaint against Defendants, Boyce Hydro Power, LLC ("BHP"); Edenville Hydro Property, LLC ("EHP"); Boyce Michigan, LLC ("BM"); Boyce Hydro LLC ("BH"); Smallwood Hydro Property LLC ("Smallwood"); and Secord Hydro Property LLC ("Secord");[1] William D. Boyce Trust 2350 U/A/D 10/1908 ("Trust 2350"); William D. Boyce Testamentary Trust 3649 U/A/D 6/1929 ("Trust 3649"); William D. Boyce Testamentary Trust 3650 U/A/D 6/1929 ("Trust 3650");[2] Lee W. Mueller ("Mueller"); Michael W. d'Avenas

---

[1] BHP, EHP, BM, BH, Smallwood, and Secord are collectively referred to as the "LLC Defendants."

[2] Trust 2350, Trust 3649, and Trust 3649 are collectively referred to as the "Trust

("d'Avenas"); Stephen B. Hultberg ("Hultberg"); and JPMorgan Chase & Co. ("JPMorgan") (collectively, "Defendants"):[3]

## INTRODUCTION

1.     This is a class-action lawsuit brought on behalf of all property owners and/or occupants who have been displaced and have otherwise suffered an interference with the use and enjoyment of property as a result of the failure of the Edenville Dam and breach of the Sanford Dam on or about May 19, 2020.

2.     On May 18, 2020, rain deluged the central Lower Peninsula of Michigan and left many areas flooded, especially Midland, Gladwin, and Saginaw counties.

3.     As a result of these heavy rains, the Edenville Dam, situated on the Tittabawassee River, failed and the river flooded surrounding areas. Many residents were urged to leave their homes and to brace themselves for the possibility of the Sanford Dam collapsing. Below is a photograph depicting the gravity of the flooding and the collapse of the Edenville Dam.

---

Defendants."

[3] Mueller, d'Avenas, Hultberg, and JPMorgan are collectively referred to as the "Trustee Defendants."



4.      At about 12:22 a.m. on May 19, 2020, the Midland County Central Dispatch issued an alert advising Edenville Township residents to leave their homes due to an "imminent dam failure."

5.      Those who live along Sanford Lake and Wixom Lake were also told to vacate their homes and relocate to shelters that had been set up at two area schools.

6.      Just before 6:00 p.m. on May 19, 2020, a section of the Edenville Dam impoundment failed. Residents of Edenville Township and Sanford were told to immediately evacuate. Additional evacuation orders followed for some City of Midland residents.

7.      Floodwaters began flowing over the top of the impoundment at Midland County's Sanford Dam.

---

[4] Photograph: Dave Petley, *Edenville Dam: A Major Dam Collapse in Michigan*, AMERICAN         GEOPHYSICAL         UNION         (May         20,         2020), https://blogs.agu.org/landslideblog/2020/05/20/edenville-dam-1/.

8.      On May 20, 2020, Midland City Manager Brad Kaye confirmed that the Sanford Dam was still overflowing, but he explained that it was hard to assess the condition of the dam as "[i]t's not entirely clear what the structure is below the water surface." If the whole structure were to collapse, he said that there would be a much higher surge and water levels would quickly rise. Below is a photograph of the massive waters overtaking the Sanford Dam.



[5]

9.      Governor Gretchen Whitmer issued an emergency declaration on May 19, 2020 and sent the National Guard to help following the collapse of the Edenville Dam and water flooded over the top of the Sanford Dam. About 10,000 people in the City of Midland were evacuated at that time, along with the Village of Sanford

_____

[5] Photograph: *List of Evacuations After Edenville Dam Collapses and Sanford Dam Nears Collapse*, ABC 12 NEWS (May 19, 2020, 10:49 p.m.), https://www.abc12.com/content/news/List-of-evacuations-after-Edenville-Dam-collapses-and-Sanford-Dam-nears-collapse-570611151.html.

and Township of Edenville. The Governor urged residents in the evacuation zones to get out immediately.

10.     On May 20, 2020, as water levels along the Tittabawassee River continued to rise, Midland County officials reported that more residents would need to evacuate.

11.     According to an alert sent at 6:36 a.m. on May 20, 2020 by Midland County Central Dispatch, the Poseyville dike broke and all residents on Ashby between Poseyville and Patterson roads were also directed to evacuate the area.

12.     Michigan National Guard units worked to aid Midland County communities impacted by massive flooding resulting from the failure of the Edenville Dam and breach of the Sanford Dam.

13.     National Guard units from Bay City, Saginaw, Port Huron, and other areas responded to the request for aid placed by the Michigan State Police. The units, comprising about 130 soldiers and more than 40 specialized vehicles, arrived in the affected areas and began missions about 4:00 a.m. on May 20, 2020.

14.     The M-30 bridge near Stryker's Marina on Wixom Lake in Gladwin County closed due to excessive flooding and collapsed around 8:00 p.m. on May 19, 2020.

15.     In Saginaw County, officials warned residents that flooding could get worse downstream when and if the Sanford Dam failed. Several roads in Saginaw County had standing water and river levels continued to rise.

16.     The flood level was at 24 feet and as of May 21, 2020, the Tittabawassee River's level was at 32.11 feet:



17.     The community of Shields, downstream of Midland and about 6 miles west of Saginaw, also experienced significant flooding.

---

[6] Graph: Lori Qualls, *Friday Update: Tittabawasee Continues to Recede; 2,600 Midland County Residents Without Power*, MIDLAND DAILY NEWS (May 22, 2020, 8:01 a.m.), https://www.ourmidland.com/news/article/FRIDAY-UPDATE-Tittabawasee-continues-to-recede-15288338.php.

18.     Arenac County experienced significant flooding and the Arenac Sheriff's Department was required to divert incoming and outgoing vehicle traffic around flooded areas.

19.     Simply put, the areas impacted by these floods have been devastated, and thousands of area residents have been displaced from their properties and forced to live in shelters and other places.

20.     The impact of these floods is far-reaching and will likely take months, if not years, to recover.



[7]

---

[7] Photograph: *Flash Flood Emergency: Edenville Dam Has Failed, Sanford Dam Has Breached*, ABC 12 NEWS (May 20, 2020, 12:30 a.m.), https://www.abc12.com/content/news/Flash-flood-emergency-Edenville-dam-has-failed-residents-advised-to-evacuate-570605051.html.



21.     As more fully set forth below, Defendants owned, operated, and/or maintained the Edenville Dam and Sanford Dam.

22.     The failure of the Edenville Dam and the breach of the Sanford Dam were events that the Defendants knew or should have known would occur, but Defendants chose profits over the safety and wellbeing of Plaintiffs and the putative class and the properties they own and/or occupy.

23.     The failure of the Edenville Dam on May 19, 2020 was the culmination of serious signs of trouble for the structure.

24.     In 2018, federal energy regulators revoked the Edenville Dam's operator's license out of concern that its spillway capacity could not pass enough water to avert a failure during a historic flood. Further, Defendants demonstrated a

---

[8] Photograph: Riley Beggin, *Michigan GOP Calls for Nessel to Step Down from Investigation into Dam Failure*, Bridge (May 22, 2020), https://www.bridgemi.com/michigan-environment-watch/michigan-gop-calls-nessel-step-down-investigation-dam-failure.

"pattern of delay and indifference to the potential consequences of this failure," which the federal regulators had found "must be remedied in order to protect life, limb and property. In the 2018 filing, regulators characterized the Edenville Dam owner, BH, as showing a pattern of non-compliance with regulatory requests to upgrade the dam. The Federal Energy Regulatory Commission wanted BH owner, Defendant Mueller of Las Vegas, Nevada, to build additional spillways to reduce the risk of failure.

25.     Defendants knew or should have known that the dams could not sustain a major flood event.

26.     For years, the Defendants chronically failed to bring the dams into compliance with state and federal laws and regulatory requirements, allowing them to remain a constant threat to the safety and wellbeing of the neighboring communities and creating an inherently dangerous environment. Defendants' abject failures to comply with the regulators' mandates created an entirely foreseeable tragedy of the magnitude addressed in this Complaint.

27.     Plaintiffs now bring this class action seeking damages that occurred as a direct result of the Defendants' egregious actions as set forth herein.

## THE PARTIES

28.     Plaintiff Kinzel is a resident of the County of Midland, State of Michigan.

29.    Kinzel, age 83, rents his home at 400 East Main St., Midland, Michigan. At the time of the subject events, Kinzel was forced from his home and required to sleep on the floor of Midland High School. He was has not permitted to return to his home and was required to stay in a hotel for weeks.

30.    Plaintiff Koening is a resident of the County of Gladwin, State of Michigan and has suffered significant damages to her property as a result of this incident.

31.    Koening owns a home located at 4398 Anderson, Beaverton, Michigan.

32.    Defendant BHP, formerly known as Synex Michigan, LLC, is a Michigan limited liability company with its principal place of business in the County of Midland, State of Michigan. BHP is wholly owned and operated by the Trust Defendants, and an alter ego of the Trust Defendants and Trustee Defendants. At all times relevant hereto, it has been in a joint venture with the other LLC Defendants and the Trust Defendants to own and operate the Edenville Dam and the Sanford Dam.

33.    Defendant EHP is a Michigan limited liability company that is formerly known as Boyce Trust Hydro Property 2350, LLC. Its principal place of business is in the County of Midland, State of Michigan. EHP is wholly owned and operated by the Trust Defendants, and an alter ego of the Trust Defendants and Trustee Defendants. At all times relevant hereto, it has been in a joint venture with the other

LLC Defendants and the Trust Defendants to own and operate the Edenville Dam and the Sanford Dam.

34.     Defendant BM is a Michigan limited liability company with its principal place of business in the County of Midland, State of Michigan. BM is wholly owned and operated by the Trust Defendants, and an alter ego of the Trust Defendants and Trustee Defendants. At all times relevant hereto, it has been in a joint venture with the other LLC Defendants and the Trust Defendants to own and operate the Edenville Dam and the Sanford Dam.

35.     Defendant BH is a Michigan limited liability company with its principal place of business in the County of Midland, State of Michigan. BH is wholly owned and operated by the Trust Defendants, and an alter ego of the Trust Defendants and Trustee Defendants. At all times relevant hereto, it has been in a joint venture with the other LLC Defendants and the Trust Defendants to own and operate the Edenville Dam and the Sanford Dam.

36.     Defendant Smallwood is a Michigan limited liability company that is formerly known as Boyce Trust Hydro Property 3649 LLC. Its principal place of business is in the County of Midland, State of Michigan. Smallwood is wholly owned and operated by the Trust Defendants, and an alter ego of the Trust Defendants and Trustee Defendants. At all times relevant hereto, it has been in a joint

venture with the other LLC Defendants and the Trust Defendants to own and operate the Edenville Dam and the Sanford Dam.

37.    Defendant Secord is a Michigan limited liability company that is formerly known as Boyce Trust Hydro Property 3650 LLC. Its principal place of business in the County of Midland, State of Michigan. Secord is wholly owned and operated by the Trust Defendants, and an alter ego of the Trust Defendants and Trustee Defendants. At all times relevant hereto, it has been in a joint venture with the other LLC Defendants and the Trust Defendants to own and operate the Edenville Dam and the Sanford Dam.

38.    Defendant Trust 2350 is an Illinois-registered Trust. It is a member of each of the LLC Defendants, in conjunction with the other Trust Defendants. At all times relevant, Trust 2350 has been engaged in a joint venture with the other Trust Defendants and the LLC Defendants to own and operate the Edenville Dam and the Sanford Dam. Additionally, at all times relevant hereto, the LLC Defendants have been alter egos of the Trustee Defendants and the Trust Defendants.

39.    Defendant Trust 3649 is an Illinois-registered Trust. It is a member of each of the LLC Defendants, in conjunction with the other Trust Defendants. At all times relevant, Trust 3649 has been engaged in a joint venture with the other Trust Defendants and the LLC Defendants to own and operate the Edenville Dam and the

Sanford Dam. Additionally, at all times relevant hereto, the LLC Defendants have been alter egos of the Trustee Defendants and the Trust Defendants.

40.    Defendant Trust 3650 is an Illinois-registered Trust. It is a member of each of the LLC Defendants, in conjunction with the other Trust Defendants. At all times relevant, Trust 3650 has been engaged in a joint venture with the other Trust Defendants and the LLC Defendants to own and operate the Edenville Dam and the Sanford Dam. Additionally, at all times relevant hereto, the LLC Defendants have been alter egos of the Trustee Defendants and the Trust Defendants.

41.    Defendant Mueller is a citizen of Nevada. He is sued personally as co-trustee and beneficiary of the Trust Defendants, and personally as member and co-manager of the LLC Defendants. At all times relevant hereto, Mueller has been engaged in a joint venture with the Trust Defendants and LLC Defendants to own and operate the Edenville Dam and the Sanford Dam. Additionally, at all times relevant hereto, the LLC Defendants have been alter egos of Mueller.

42.    Defendant d'Avenas is a citizen of California. He is sued personally as co-trustee and beneficiary of the Trust Defendants. At all times relevant hereto, d'Avenas has been engaged in a joint venture with the Trust Defendants and LLC Defendants to own and operate the Edenville Dam and Sanford Dam. Additionally, at all times relevant hereto, the LLC Defendants have been alter egos of d'Avenas.

43.    Defendant Hultberg is a citizen of Nevada. He is sued personally as co-trustee and beneficiary of the Trust Defendants, and personally as member and co-manager of the LLC Defendants. At all times relevant hereto, Hultberg has been engaged in a joint venture with the Trust Defendants and LLC Defendants to own and operate the Edenville Dam and the Sanford Dam. Additionally, at all times relevant hereto, the LLC Defendants have been alter egos of Hultberg.

44.    Defendant JPMorgan is a Delaware Corporation with its principal place of business in New York. Upon information and belief, JPMorgan is the successor in interest to Bank One Corporation and/or Bank One Trust Company NA following their merger in or about 2004. It is sued personally and directly as a co-trustee of the Trust Defendants. At all times relevant hereto, JPMorgan has been engaged in a joint venture with the Trust Defendants and LLC Defendants to own and operate the Edenville Dam and Sanford Dam. Additionally, at all times relevant hereto, the LLC Defendants have been alter egos of JPMorgan.

45.    In law and in fact, all of the Defendants own, operate, fund, and maintain the Edenville Dam and Sanford Dam.

46.    Upon information and belief, the LLC Defendants had no separate existence other than as conduits for the Trust Defendants and Trustee Defendants, and the Trust Defendants and Trustee Defendants consistently held themselves out as individually conducting business affairs in connection with the ownership and

operation of the Edenville Dam and the Sanford Dam without the proper use of corporate names and without identifying that their actions were taken as officers or employees of the various, respective LLC Defendants.

47.     Upon information and belief, the LLC Defendants:

a.     were insufficiently capitalized and maintained insufficient assets, including liability insurance coverage, considering the ultrahazardous ownership and operation of the Edenville Dam and Sanford Dam as alleged more fully herein;

b.     were intermingling funds between and among themselves and the personal and/or trust assets of the Trust Defendants and Trustee Defendants in the ownership and operation of the Edenville Dam and Sanford Dam;

c.     failed to have any functioning officers, directors, members, and managers;

d.     failed to observe corporate formalities evidencing a distinction in fact between themselves and the Trust Defendants and Trustee Defendants;

e.     were mere instrumentalities of the Trust Defendants and Trustee Defendants in the ownership and operation of the Edenville Dam and Sanford Dam; and

f.      were created, maintained and utilized for the express or implied purpose of committing negligent, careless, reckless, willful, wanton, and malicious acts of wrongdoing with impunity by attempting to insulate the Trust Defendants and Trustee Defendants from potential liability in connection with the ownership and operation of the Edenville Dam and Sanford Dam, thereby exposing Plaintiffs and all others similarly situated to unjust losses and damages as alleged herein.

48.    Additionally, the LLC Defendants, Trust Defendants, and Trustee Defendants constituted a joint venture to undertake the ownership and operation of the Edenville Dam and Sanford Dam jointly for the purpose of sharing associated profits and losses, and in connection therewith, each contributed their respective skills, property, or resources in exercising control or a right of control over the Dams.

## JURISDICTION, AND VENUE

49.    This Court has subject matter jurisdiction over this case under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) because the amount in controversy exceeds $5,000,000, exclusive of interest and costs, because there are more than 100 putative class members, and because Plaintiffs and many members of the putative class are residents of different states than several of the Defendants.

50.     Venue is proper in this District under 28 U.S.C. § 1391(a)(1) because a substantial part of the events and omissions giving rise to this action occurred in this District, Defendants' operations in this District caused the events alleged above, which caused harm to Plaintiffs and members of the putative class residing in this District.

GENERAL ALLEGATIONS

51.     Plaintiffs reallege and incorporate the preceding paragraphs as though fully set forth herein.

52.     The Edenville Dam was built in 1925 and impounds both the Tittabawassee River and its tributary the Tobacco River, resulting in the formation of Wixom Lake.

53.     The Tittabawassee River is a tributary to the Saginaw River and runs through Midland County to Saginaw County.

54.     The Sanford Dam is downstream on the Tittabawassee.

55.     Defendants purchased the Edenville Dam in 2004.

56.     As a hydroelectric dam, the Edenville Dam is licensed and regulated by the U.S. Federal Energy Regulatory Commission, ("FERC").

57.     The FERC's Dam Safety Guidelines require projects that present a threat to human life or cause significant property damage in the event of a flood, must be designed to either withstand overtopping up to the probably maximum

flood, or to the point where a failure would no longer constitute a hazard. Alternatively, the capacity of the spillway must be adequate to prevent the reservoir from rising to an elevation that would endanger the safety of the project.

58.    The FERC classified the Edenville Dam as a high hazard dam, meaning that its failure could present significant risk to life and property.

59.    Prior to the subject events, the FERC advised Defendants that the Edenville Dam "could pose a significant risk to the Village of Sanford, Northwood University, the City of Midland, and other downstream areas" within the meaning of the Guidelines. *In re Boyce Hydro Power, LLC*, 162 FERC ¶ 61,007, at p. 2–3 (Jan. 5, 2018) (available at https://www.ferc.gov/CalendarFiles/20180105134922-P-10808-057.pdf).

60.    The FERC also put Defendants on notice that the Edenville Dam lacked, among other things, the necessary spillways to reduce the risk of failure as required by the Guidelines.

61.    The FERC advised that the Edenville Dam could not handle 50% of a probable maximum flood for the region and that the Defendants' insufficient and incomplete plans would increase capacity only to 66% of a probable maximum flood.

62.    After the Defendants' acquisition of the dam on September 23, 2004, the FERC's Regional Engineer sent a letter to Defendants requesting they submit

designs in order to construct auxiliary spillways in 2005 and 2006. *Boyce Hydro Power, LLC*, 159 FERC ¶ 62,292, at p. 4 n.10 (June 15, 2017) (available at https://elibrary.ferc.gov/IDMWS/common/OpenNat.asp?fileID=14615876).

63.     Defendants failed to appropriately respond to the FERC request.

64.     It was not until 2009 that Defendants ultimately committed to construct two auxiliary spillways in 2014 and 2015 respectively; however, they failed to meet their deadlines or complete the work. *Boyce Hydro Power, LLC*, 159 FERC ¶ 62,292, at p. 6.

65.     In 2012, Tabacco Township sued Defendant Boyce Hydro alleging that the Edenville Dam required "significant repairs/ new construction," and that "Defendant does not have the requisite funds to finance the Dam Project." *Tobacco Twnshp v Boyce Hydro, LLC*, EDMI Case No. 1:13-cv-12331, ECF No. 1.

66.     In 2014, the FERC again worked with Defendants in an effort to finalize a timeline for completing two spillways in 2015 and 2016. But, Defendants again failed to meet these deadlines or even file "complete and adequate plans." *Boyce Hydro Power, LLC*, 159 FERC ¶ 62,292, at p. 7.

67.     According to the FERC in 2017:

Since acquiring the license in 2004, the licensee has not filed adequate plans, specifications, or designs as directed by the Regional Engineer for addressing spillway capacity concerns at the project. The licensee has failed to follow Regional Engineer directives to meet the PMF, has consistently filed inadequate and untimely reports, studies, plans, and specifications in preparing for construction of risk reduction measures

to address spillway capacity deficiencies, and has failed to acquire a necessary permit.

. . .

Thirteen years after acquiring the license for the project, the licensee has still not increased spillway capacity leaving the project in danger of a PMF event. **The licensee has shown a pattern of delay and indifference to the potential consequences of this situation. A situation that must be remedied in order to protect life, limb, and property**.

*Id.* at 5, 7–8 (emphasis added).

68.    On June 15, 2017, the FERC found Defendant to be in violation of the terms of its license and the regulations for, among other things, "failing to increase the spillway capacity of the project to address the probable maximum flood (PMF)."

*Id.* The FERC explained:

[T]he Commission's primary concern is the licensee's longstanding failure to address the project's inadequate spillway capacity. The Edenville Dam has a high hazard potential rating, which **means a failure of the project's work would create a threat to human life and/or would cause significant property damage. The project's spillway deficiencies must be remedied.**

*Id.* at 1 (emphasis added).

69.    On November 20, 2017, the FERC found Defendants to be in violation of the Federal Power Act (FPA), FERC regulations, and their license relating to the Edenville Dam. *Id.* In its order, the FERC stated:

The Commission's primary concern with the Edenville Project is the licensee's longstanding failure to address the project's inadequate spillway capacity. The project's spillway deficiencies must be remedied. **Commission staff have worked with the licensee for over 13 years to**

**address this problem but to no avail**. The licensee has similarly been unresponsive in addressing other compliance matters related to dam safety, recreation at the project, and property rights.

*In re Boyce Hydro Power, LLC*, 161 FERC ¶ 62,119, 2017 WL 5586862 (Nov. 20, 2017) (emphasis added). As a result, Defendants had to cease their operations until further notice.

70.    In 2018, the FERC again stated that "Boyce has repeatedly failed to comply with requests by the Regional Engineer . . . to address the fact that **the project spillways are not adequate to pass the probable maximum flood, thereby creating a grave danger to the public**." *In re Boyce Hydro Power, LLC*, 162 FERC ¶ 61,007, at p. 3 (emphasis added).

71.    When Defendants lost their license, the dam came under the regulatory authority of the Michigan Department of Environment, Great Lakes, and Energy. The Michigan Department also had strong concerns about the dam's inadequate spillway capacity.

72.    Defendants did not increase the Edenville Dam's spillway capacity at any time from 2018 through May 19, 2020.

## CLASS-ACTION ALLEGATIONS

73.    Plaintiffs reallege and incorporate the preceding paragraphs as though fully set forth herein.

74.     Plaintiffs bring this matter as a class action pursuant to Fed. R. Civ. P. 23(b)(3) and (c).

75.     Plaintiffs bring this action on behalf of themselves and all other persons similarly situated. Plaintiffs propose to represent the following classes:

> **Subclass 1**: All persons who own residential homes or property who have suffered damage to property, loss of enjoyment of their property or loss of the use of their property at any time from May 19, 2020 up to the date of trial (the "Class Period") as a result of failure of the Edenville Dam and the breach of the Sanford Dam.

> **Subclass 2**: All non-owner occupants of residential properties who have suffered loss of enjoyment of their property or loss of the use of their property at any time during the Class Period as a result of failure of the Edenville Dam and the breach of the Sanford Dam

76.     Rule 23(c)(1) permits class certification orders to be conditional and to be altered or amended at any time before a decision is rendered on the merits.  As evidentiary facts are developed, the trial court may decertify, subclassify, or modify a previously certified class action. Plaintiffs expressly reserve the right to modify the class definitions as the litigation proceeds.

77.     Plaintiffs are not asserting any present personal injury claim as a result of failures of the Edenville Dam and Sanford Dam. Plaintiffs specifically exclude from their class definitions any persons with an accrued claim for personal injuries as a result of the subject events. Plaintiffs request that the Court reserve any claims for personal injury that any Plaintiffs or class member may have beyond those claims for which certification is sought.

78.    Plaintiffs shall serve as class representative.

79.    That the claims of the representative party Plaintiffs are typical of the claims of the members of the putative class.

80.    Plaintiffs are members of the class that has sustained damages arising from Defendants' actions.

81.    The class of Plaintiffs is so numerous that joinder of all members would be impracticable.

82.    Plaintiffs as the class representatives will fairly and adequately assert and protect the interests of the members of the class and designated subclasses and have retained counsel competent and experienced in this type of litigation. Plaintiffs have no interest that is contrary to or in conflict with the class members they seek to represent.

83.    That the maintenance of the action as a class action will be superior to other available methods of adjudication in promoting the convenient administration of justice, as otherwise there could be conflicting rulings from different courts with regard to the claims made by the class members against Defendants.

84.    That class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, due to the size of the class, the expense and burden of individual litigation makes it impossible for the members of the class individually to

address wrongs done to them. Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

85.    That there are common questions of fact and law among all members of the class. One of, but not the sole, principal common issue with regard to the putative classes is whether the Defendants are liable for the damage caused by the failure of the Edenville Dam and the breach of the Sanford Dam.

86.    Notice covering the matters set forth in Fed. R. Civ. P. 23(c) may be accomplished by sending written notice via first class mail to all class members, by publication in a newspaper of appropriate circulation, by way of social media or other means of online publications and the websites of Defendants and of proposed class counsel, Hertz Schram PC.

## COUNT I
### NEGLIGENCE

87.    Plaintiffs reallege and incorporate the preceding paragraphs as though fully set forth herein.

88.    Defendants owed Plaintiffs and all others similarly situated a duty to exercise reasonable conduct, to follow all applicable laws and standards and to prevent the failure of the Edenville Dam and the breach of the Sanford Dam and prevent and/or minimize flooding in the impacted areas.

89.     Defendants failed to exercise due care in their maintenance, monitoring and repair of the dams so as to prevent their failure and breach, and the resulting uncontrolled flooding.

90.     Defendants failed to exercise due care by failing to hire, retain, supervise and train appropriate personnel to monitor and maintain the Edenville Dam and Sanford Dam.

91.     Defendants failed to exercise due care by failing to properly design, construct, maintain, inspect or monitor facilities, procedures and equipment, including the dams, and by failing to ensure that dams could safely withstand heavy rains, thus causing the failure and breach of the dams and uncontrolled flooding.

92.     Defendants knew or should have known that the dams were operating under hazardous conditions, not in compliance with Michigan, federal and industry standards, therefore causing the failure and breach of the dams and the attendant uncontrolled flooding.

93.     Defendants failed to respond to the FERC's warnings to increase the spillways and that failure to do so would result in substantial loss of property.

94.     It was foreseeable that Defendants' actions and omissions would result in injury to Plaintiffs' property rights as demonstrated by the FERC's persistent warnings.

95.     As a direct and proximate result of the Defendants' breaches of their duties, Plaintiffs, and others similarly situated, were harmed and continue to be harmed.

WHEREFORE, Plaintiffs respectfully request entry of a Judgment against the Defendants in whatever amount Plaintiffs and class members are found to be entitled, including for actual damages, treble damages, diminution in property value and all other relief this Court deems just and appropriate, including but not limited to, all costs and attorneys' fees associated with bringing this action and interest from the date of the filing of this Complaint until the date of judgment at the statutory rate.

## COUNT II
### NUISANCE

96.     Plaintiffs reallege and incorporate the preceding paragraphs as though fully set forth herein.

97.     Defendants' acts or omissions have interfered with the Plaintiffs' property rights, privileges, and use and enjoyment of property so as to constitute a nuisance.

98.     Defendants' acts or omissions created an unreasonable and wrongful release of water resulting in uncontrolled and massive flooding onto the property of Plaintiffs and others similarly situated.

99.     Defendants' actions resulted in and continues to result in significant harm to Plaintiffs and all others similarly situated.

100.   Plaintiffs' interest in the use and enjoyment of their property was diminished by Defendants' acts or omissions, which caused, among other things massive flooding onto Plaintiffs' property; the destruction and harm of real property; forced evacuation from their homes; the loss of privacy; the forced witnessing and ongoing observation of remediation and cleanup crews, equipment, trucks and governmental and law enforcement personnel.

101.   The massive flooding and damage to real property has resulted in the diminution in value of property owned by the Plaintiffs and all others similarly situated.

102.   Plaintiffs did not consent to the Defendants' actions as described herein.

103.   Defendants' actions as alleged herein constitute an unreasonable interference with the safety, peace, comfort and convenience of the Plaintiffs and all others similarly situated.

104.   Defendants' actions and omissions have caused and continue to cause harm to Plaintiffs and all others similarly situated.

WHEREFORE, Plaintiffs respectfully request entry of a Judgment against the Defendants in whatever amount Plaintiffs and class members are found to be entitled, including for actual damages, treble damages, diminution in property value

and all other relief this Court deems just and appropriate, including but not limited
to, all costs and attorneys' fees associated with bringing this action and interest from
the date of the filing of this Complaint until the date of judgment at the statutory
rate.

**COUNT III**
**STRICT LIABILITY**
**FOR ABNORMALLY DANGEROUS ACTIVITY**

105.   Plaintiffs reallege and incorporate the preceding paragraphs as though
fully set forth herein.

106.   Defendants have engaged in an abnormally dangerous activity by
knowingly operating antiquated dams which were, in disrepair, and not designed to
withstand heavy rainfalls and that posed a significant risk of massive flooding,
overwhelming damage to property and death to area residents.

107.   Pleading in the alternative to Plaintiffs' negligence count, Defendants'
exercise of reasonable care could not have eliminated the risk of harm caused by the
operation and maintenance of aged dams that were highly susceptible to failure.

108.   There is little or no value to the affected communities in having these
dams that were destined to fail and cause serious harm to life and property.

109.   As a direct and proximate result of the Defendants' conduct in engaging
in the abnormally dangerous activities alleged above, massive flooding and
destruction of property occurred.

110.    The harm sustained by Plaintiffs and the class is exactly the kind of harm posed, the possibility of which made the activities of the Defendants abnormally dangerous.

111.    Defendants are strictly liable for all damages and injuries to Plaintiffs and all others similarly situated, resulting from the abnormally dangerous activities.

WHEREFORE, Plaintiffs respectfully request entry of a Judgment against the Defendants in whatever amount Plaintiffs and class members are found to be entitled, including for actual damages, treble damages, diminution in property value and all other relief this Court deems just and appropriate, including but not limited to, all costs and attorneys' fees associated with bringing this action and interest from the date of the filing of this Complaint until the date of judgment at the statutory rate.

## COUNT IV
## STATUTORY TRESPASS – VIOLATION OF MCL 600.2919(1)

112.    Plaintiffs reallege and incorporate the preceding paragraphs as though fully set forth herein.

113.    MCL 600.2919(1) provides in relevant part:

Any person who:

(a)    cuts down or carries off any wood, underwood, trees, or timber or despoils or injures any trees on another's lands, or

(b)    digs up or carries away stone, ore, gravel, clay, sand, turf, or mould or any root, fruit, or plant from another's lands, or

(c)    cuts down or carries away any grass, hay, or any kind of grain from another's lands without the permission of the owner of the lands, or on the lands or commons of any city, township, village, or other public corporation without license to do so, is liable to the owner of the land or the public corporation for 3 times the amount of actual damages.

114.    As alleged herein, the Defendants, individually and collectively, maintained and operated the dams in contravention of federal statutes and guidelines, and industry standards.

115.    Defendants knew or reasonably should have known that the Edenville Dam could not withstand the heavy rains and would result in floodwaters invading the land of Plaintiffs and all others similarly situated.

116.    As a direct and proximate result of the Defendants' actions and/or omissions, as alleged, Plaintiffs have suffered damages and are entitled to recover three times the amount of actual damages.

WHEREFORE, Plaintiffs respectfully request entry of a Judgment against the Defendants in whatever amount Plaintiffs and class members are found to be entitled, including for actual damages, treble damages, diminution in property value and all other relief this Court deems just and appropriate, including but not limited to, all costs and attorneys' fees associated with bringing this action and interest from

the date of the filing of this Complaint until the date of judgment at the statutory rate.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted,

HERTZ SCHRAM PC

By:   */s/ Elizabeth C. Thomson*
Elizabeth C. Thomson (P53579)
Patricia A. Stamler (P35905)
Matthew J. Turchyn (P76482)
Attorneys for Plaintiff
1760 S. Telegraph Rd., Ste. 300
Bloomfield Hills, MI 48302-0183
(248) 335-5000
lthomson@hertzschram.com
pstamler@hertzschram.com
mturchyn@hertzschram.com

Dated: July 13, 2020